IN THE MATTER OF VINCENT L. VERDIRAMO, AN ATTORNEY-AT-LAW.

May 31, 1984.

*Colette A. Coolbaugh,* Counsel, argued the cause for complainant Disciplinary Review Board.

*Sheldon A. Weiss* argued the cause for respondent.

PER CURIAM.

The essential facts in this disciplinary case have been set forth in the Decision and Recommendations of the Disciplinary Review Board (DRB).

In 1975, the respondent, who was primarily involved in criminal law matters, was acting as an Administrative Aide to Congressman Henry Helstoski. He was also a member of the Congressman's team of defense attorneys who represented Helstoski in a federal criminal matter. On April 17, 1976, the respondent, who had just returned from a trip to Atlanta, received a telephone message to call Helstoski. At Helstoski's request, the respondent drove directly to Helstoski's office. Helstoski introduced respondent to Joel Urdang, who was about to testify before a federal Grand Jury with regard to Helstoski's alleged failure to report certain income to the Internal Revenue Service. The respondent was aware that an individual named John Mazella, an employee of Helstoski, had previously testified before the Grand Jury and had made certain misstatements during his testimony. The respondent knew that Urdang's testimony could contradict that of Mazella. Thus, during this conversation with Urdang, the respondent stated—"Look, do me a favor. Just don't hurt the old guy, will you?"

The respondent testified at a hearing before the District VI Ethics Committee that he was trying to protect Mazella, who was old, was in questionable health, and had a nice family. Mazella was "a genuinely nice human being who screwed up what checks went into what account." [Reference to transcript omitted.] His conversation with Urdang lasted about one and one half minutes. At the time the respondent spoke to Urdang concerning Mazella he was aware that he was asking Urdang to lie before the Grand Jury. [Reference to transcript omitted.]

On June 2, 1976, the respondent was charged in two counts of a twelve count indictment with obstruction of justice in violation of 18 *U.S.C.* § 371 and influencing a witness in violation of 18 *U.S.C.* § 1503. The respondent entered a guilty plea on September 28, 1976 to the charge of influencing a witness. On September 21, 1977, the respondent was sentenced to a term of five years imprisonment, with the suspension of all but 60 days of that term, and probation for the remaining four years and ten months. A fine of $2,500 was assessed as a condition of probation. Execution of sentence was stayed until October 11, 1977. The remaining Count of that indictment against the respondent was dismissed.

The DRB also noted that two other federal indictments that were pending against respondent at that time had been dis-

missed as part of the plea agreement. The indictments and their dispositions were summarized as follows:

1. *CR 74–313*—The respondent and several others were charged with conspiracy, obstruction of justice and illegal wiretapping resulting from the discovery of a wiretap in respondent's office. None of the indicted individuals were ever tried, and respondent states that an investigation by the State Police at his request revealed that the wiretap equipment was purchased by the Federal Government.

2. *CR 75–521*—Respondent was charged with conspiracy and mail fraud for allegedly overvaluing the contents of a house in which he had an interest in a claim mailed to an insurance company after the house had been vandalized and burned by unknown individuals. His partner in that investment was also charged but the matter never proceeded to trial.

The DRB mentioned respondent's contention "that, because of his activities as a criminal defense attorney these indictments had no merit and were part of a course of conduct of certain individuals within the federal government who were 'trying to wear (him) down.'" The respondent served approximately 45 days in a federal prison facility for the conviction. His probationary term ended on October 11, 1982.

The DRB determined that respondent was guilty of ethical misconduct deserving of discipline. It stated:

The respondent entered a plea of guilty to a charge of obstruction of justice by attempting to influence a witness before the United States Grand Jury. The record demonstrates that respondent knew he was asking this witness to perjure himself before the Grand Jury at that time. Respondent's actions were clearly an attempt to subvert the administration of justice and related directly to the practice of law, since respondent's client, Helstoski, stood to gain if Mazella's testimony had been confirmed by Urdang.

We concur in the findings of the DRB. The clear and convincing evidence demonstrates that respondent was guilty of the crime of obstruction of justice in attempting to persuade a prospective witness to testify falsely before a grand jury. This constitutes grave misconduct that goes to the heart of the administration of justice and violates *DR* 1–102(A)(4) and (5). As we stated in *In re Rosen,* 88 *N.J.* 1, 3 (1981):

Attempted subornation of perjury is an inexcusable and reprehensible transgression. It is an obstruction of the administration of justice. Respondent's actions project a public image of corruption of the judicial process. *In re La Duca,* 62 *N.J.* [133,] 140 [(1973)]; *In re Foster,* 60 *N.J.* 134, 136 (1972).

The DRB recognized the gravity of respondent's ethical violation but declined to recommend disbarment. It stated:

The Board is cognizant of the "necessity to foster public respect for the integrity of the administration of justice," *In re Gross*, 85 *N.J.* 26, 29 (1980). Considering respondent's lengthy suspension which has generally paralleled his criminal probationary period, the Board has concluded that an additional term of suspension is unnecessary and therefore recommends that respondent be eligible to apply for reinstatement on or after January 1, 1984.

To foster the public interest and preserve confidence in the justice system, we have held that ethical transgressions, such as the misuse of a client's moneys entrusted to a lawyer, warrant the ultimate sanction of disbarment. *E.g., In re Wilson*, 81 *N.J.* 451 (1979). Professional misconduct that takes deadly aim at the public-at-large is as grave as the misconduct that victimizes a lawyer's individual clients. Because such a transgression directly subverts and corrupts the administration of justice, it must be ranked among the most egregious of ethical violations.

We have not, in the past, been uniform in our approach to appropriate sanctions for serious ethical violations of this kind—those that involve criminal acts of dishonesty that directly impact the administration of justice. *Compare In re Rosen, supra*, 88 *N.J.* 1 (respondent's conviction of attempted subornation of perjury resulted in suspension of three years in view of mitigating factors) *and In re Mirabelli*, 79 *N.J.* 597 (1979) (respondent's guilty plea to accusation charging bribery warranted three year suspension and not disbarment due to mitigating circumstances) *with In re Hughes*, 90 *N.J.* 32 (1982) (respondent's guilty plea to charges of bribing public official and forging public documents warrants disbarment despite mitigating factors). We believe that ethical misconduct of this kind—involving the commission of crimes that directly poison the well of justice—is deserving of severe sanctions and would ordinarily require disbarment. *See, e.g., In re Hughes, supra*, 90 *N.J.* 32.

Under the circumstances of this case we are constrained to adopt the DRB's recommendations that respondent be suspend-

ed from the practice of law for the period of time that he has been barred from active practice of law. As noted, in the past we have not consistently imposed the same measure of discipline for the commission of crimes that directly undermine the administration of justice. In several recent cases involving crimes and ethical breaches of this magnitude, we did not disbar the offending attorney. *See, e.g., In re Mirabelli, supra,* 79 *N.J.* 597; *In re Rosen, supra,* 88 *N.J.* 1. Further, respondent has been effectively removed from the practice of law for approximately seven years. This greatly exceeds the maximum period of suspension—three years—traditionally imposed by this Court for the most serious ethical infractions that do not otherwise warrant disbarment. *Cf. In re Friedland,* 92 *N.J.* 107 (1983) (disbarment imposed by the Indiana Supreme Court for professional misconduct in that State, which in effect was similar to a suspension of five years, resulted in reciprocal New Jersey suspension of five years).

Finally, we are mindful that the events that now call for the exercise of discipline occurred more than eight years ago. In this case, the public interest in proper and prompt discipline is necessarily and irretrievably diluted by the passage of time. Disbarment now would be more vindictive than just. *Cf. In re Strickland,* 87 *N.J.* 575 (1981) (recognition of non-retroactivity in *In re Smock,* 86 *N.J.* 426 (1981), is appropriate where ethics complaints were filed a considerable time prior to *In re Wilson, supra,* 81 *N.J.* 451 and misappropriations occurred even earlier); *In re Smock, supra,* 86 *N.J.* 426 (retroactive application of *In re Wilson, supra,* does not serve a deterrent purpose).

We conclude that under the special circumstances present in this case, the interests of the public and the legal profession will be served adequately by respondent's suspension from the practice of law for the period of time commencing with the order providing for his temporary suspension effective on January 1, 1977 to the date of this opinion. Respondent shall, however, be required to apply for reinstatement to practice and shall be admitted only upon the order of this Court. He is

directed to reimburse the Administrative Office of the Court for appropriate administrative costs including production of transcripts.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

### ORDER

It is ORDERED that the suspension from the practice of law of VINCENT L. VERDIRAMO of JERSEY CITY that commenced on January 1, 1977, shall continue until the date of this Order and until the further Order of this Court after consideration of an appropriate application for restoration; and it is further

ORDERED that VINCENT L. VERDIRAMO reimburse the Office of Attorney Ethics for appropriate administrative costs, including the production of transcripts; and it is further

ORDERED that VINCENT L. VERDIRAMO is restrained and enjoined from the practice of law during the period of his suspension; and it is further

ORDERED that VINCENT L. VERDIRAMO comply with Administrative Guideline # 23 of the Office of Attorney Ethics regarding suspended attorneys.