### IN THE MATTER OF ALEXANDER KUSHNER, AN ATTORNEY AT LAW.

Argued November 6, 1985—Decided January 8, 1986.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause for Office of Attorney Ethics.

*Michael A. Querques* argued the cause for respondent.

PER CURIAM.

This disciplinary proceeding arose from a motion for final discipline against respondent that was filed with the Disciplinary Review Board (DRB) by the Office of Attorney Ethics. Respondent was temporarily suspended from the practice of law on December 20, 1984, *R.* 1:20–6(a)(1), on the basis of respondent's guilty plea to a charge of false swearing, *N.J.S.A.* 2C:28–2(a), a fourth-degree crime. The DRB has recommended, by a vote of 7–1, that respondent be suspended from the practice of law for one year retroactive to December 20, 1984.

I

The DRB accurately sets forth the relevant facts in its Decision and Recommendation:

The Bergen County Grand Jury returned indictment No. S–1067–82 on November 22, 1982 charging Respondent with perjury (count 1, *N.J.S.A.* 2C:28–1) and with false swearing (count 2, *N.J.S.A.* 2C:28–2a). Respondent was charged with making a false statement by denying that he had signed promissory notes which were the subject of civil litigation. These alleged acts occurred between September 14 and 19, 1981. Respondent had invested a total of $45,000 into a business and ultimately became a major stock holder in it. On August 15, 1980 the business borrowed $40,000 from a bank. This note was personally guaranteed by Respondent and his business partner. The note later went into default with an outstanding balance due of $35,555.56. When the bank notified the partners, Respondent's partner replied that he had filed a petition for bankruptcy. Respondent claimed he had not signed or authorized anyone to sign the $40,000 note on his behalf, asserting that his signatures were forged.

When the bank filed a civil action to collect the money due, Respondent stated in his answer that the signatures were not his. In a certification dated September 14, 1981, Respondent swore that he had examined both promissory notes "and it is evident that the four signatures on said notes purporting to be that of Alexander Kushner are all different and were not signed by me." He "specifically" denied either signing any of the notes or authorizing anyone to sign his name. The certification contained the follow [sic] statement:

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

On October 13, 1981, the Bergen County Superior Court granted Respondent's motion for summary judgment because the bank had failed to reply to his request for admissions.

Subsequently the matter was brought to the attention of the Bergen County Prosecutor's office. During his criminal trial, Respondent pleaded guilty to count 2 of the indictment. On October 26, 1984 he was sentenced to 18 months probation. Count 1 was dismissed.

Respondent was temporarily suspended from the practice of law on December 20, 1984 pursuant to *R.* 1:20–6(a)(1).

In recommending that respondent be suspended from practice for one year, the DRB considered the following mitigating factors:

[R]espondent has satisfied his obligation to the bank. He has volunteered to do community service during his probation. No client was harmed. This is the only ethical charge ever filed against him. Respondent was apparently under severe personal and professional stress due to his marital situation and his law partner's ill health. The outpouring of support for Respondent by more than 200 professional colleagues and clients is impressive.

## II

The criminal conviction of an attorney is conclusive evidence of the commission of that crime in disciplinary proceedings. *R.* 1:20–6(b)(1); *In re Rosen,* 88 *N.J.* 1, 3 (1981). The sole issue to be determined by this Court is the extent of the final discipline to be imposed. *R.* 1:20–6(b)(2)(ii); *In re Infinito,* 94 *N.J.* 50, 56 (1983).

As we noted in *In re Wilson,* 81 *N.J.* 451, 456 (1979), "the principal reason for discipline is to preserve the confidence of the public in the integrity and trustworthiness of lawyers in general." In pursuit of this goal, we consider the interests of the public and the bar, as well as the interests of the individual involved. *In re Infinito, supra,* 94 *N.J.* at 57; *In re Mischlich,* 60 *N.J.* 590, 593 (1972).

Disciplinary determinations are necessarily fact-sensitive. *In re Infinito, supra,* 94 *N.J.* at 57. Relevant concerns include the nature and severity of the crime, and the relation of the crime to the practice of law. *Id.* Our central concern is the fostering of public confidence in the bar, not the punishment of wrongdoing attorneys. *In re Hughes,* 90 *N.J.* 32, 36 (1982). We consequently take into account evidence that does not

dispute the crime but that mitigates the damage an attorney's misconduct has done, and is likely to do, to the integrity of the legal profession. *See In re Infinito, supra,* 94 *N.J.* at 57; *In re Hughes, supra,* 90 *N.J.* at 36; *In re Mischlich, supra,* 60 *N.J.* at 593. Such evidence may include an attorney's good reputation, his prior trustworthy professional conduct, and his general good character. *In re Infinito, supra,* 94 *N.J.* at 57.

 As noted by the DRB, respondent's professional reputation was previously unblemished. Numerous letters from members of the bar testified to respondent's good character and fine reputation as an active trial lawyer. The DRB observed that no client was harmed. However, respondent knowingly made a false certification to a court that was intended to cause financial loss to the bank that had loaned money to respondent's business. The false certification was obviously a significant factor in inducing the trial court to grant respondent's motion for summary judgment, thereby enabling respondent to avoid his liability as a guarantor on the promissory notes. The filing by a lawyer of a false certification to induce a court to grant relief for his benefit is a fundamental breach of a lawyer's duty as an officer of the court. Such conduct diminishes public confidence in the legal profession and goes "to the heart of every attorney's obligation to uphold and honor the law." *In re Schleimer,* 78 *N.J.* 317, 319 (1978) (one-year suspension for false swearing in a civil case).

Respondent's behavior constituted misconduct under the Disciplinary Rules.[1] DR 1–102(A)(3), (4), and (5) (engaging in illegal conduct that adversely reflects on a lawyer's fitness to

---

[1]Effective September 10, 1984, the Rules of Professional Conduct of the American Bar Association, as modified by this Court, govern the conduct of the members of the bar of this State. *R.* 1:14. Respondent's actions occurred prior to this date, and are consequently governed by the Disciplinary Rules then in force. *See In re Milita,* 99 *N.J.* 336, 342 (1985). Respondent's behavior is equally violative of RPC 8.4(b), (c), and (d), the analogous provisions of the Rules of Professional Conduct.

practice law; engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and engaging in conduct that is prejudicial to the administration of justice).

Because of the case-by-case nature of disciplinary determinations, earlier cases suggest but do not necessarily determine the discipline that is appropriate in this matter. We noted in *In re Verdiramo*, 96 *N.J.* 183, 186 (1984), that previously there had not been a uniform approach to discipline in cases that involve criminal acts of dishonesty that directly undermine the administration of justice. However, we observed that such misconduct "involving the commission of crimes that poison the well of justice is deserving of severe sanctions and would ordinarily require disbarment." *Id.* at 186. The misconduct in this case antedated our decision in *Verdiramo*.

Two prior cases deal specifically with instances of false swearing. In *In re Rospond*, 87 *N.J.* 572 (1980), an attorney pleaded guilty to two counts of false swearing. The attorney admitted to lying to a state grand jury in the course of an investigation of his business partner. Rospond had accused his business partner of misusing corporate funds; his business partner charged that Rospond attempted to extort from him the money at issue. In investigating the latter charge, the State Police recorded conversations inconsistent with Rospond's grand-jury testimony. Rospond was fined $3,000 as a result of his criminal conviction and was suspended from the practice of law for two years.

In *In re Schleimer, supra,* 78 *N.J.* 317, attorney Schleimer was convicted of false swearing in violation of *N.J.S.A.* 2A:131-4 and fined $1000. In the course of prosecuting a civil suit alleging fraud in a business transaction, Schleimer falsely testified at deposition that a check he had written to defendant for $8,000 originally bore a legend indicating that the check represented a loan. This Court recognized both the gravity of the offense—"going to the heart of every attorney's obligation to uphold and honor the law"—and the mitigating circumstanc-

es posed by Schleimer's 40 years of unblemished legal service and declining practice due to age. Schleimer was suspended from practice for one year, pursuant to the DRB's recommendation.

When an attorney engaged in a continuous course of conduct involving false swearing, fraud, and deception, we found disbarment the necessary sanction. *In re Bricker,* 90 *N.J.* 6 (1982). The respondent in *Bricker* obtained title to a number of valuable parcels of real estate through repeated acts of misrepresentation, some while under oath. *Id.*

We ordinarily place great weight on the recommendation of the Disciplinary Review Board. *In re Rosen, supra,* 88 *N.J.* at 3; *In re Mirabelli,* 79 *N.J.* 597, 602 (1979). Nevertheless, we do not hesitate to impose a more severe sanction than that recommended by the Board when circumstances warrant. *See In re Infinito, supra,* 94 *N.J.* at 58; *In re Rosen, supra,* 88 *N.J.* at 3.

Respondent knowingly made a false certification in court to avoid liability on a promissory note he signed. This is grave misconduct that directly undermines the administration of justice. Taking into account all of the relevant circumstances, we conclude that the interests of the public and the profession will be properly served by respondent's suspension from the practice of law for a period of three years from December 20, 1984, the date of his temporary suspension, and until further order of this Court. We also impose upon respondent the obligation to reimburse the Ethics Financial Committee for appropriate administrative costs.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that ALEXANDER KUSHNER of JERSEY CITY, who was admitted to the bar of this State in 1963, be suspended from the practice of law for a period of three years, retroactive to December 20, 1984, and until the further order of this Court; and it is further

ORDERED that ALEXANDER KUSHNER reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that ALEXANDER KUSHNER be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that ALEXANDER KUSHNER comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.