IN THE MATTER OF DON X. BANCROFT, AN
ATTORNEY AT LAW.

March 18, 1986.

115

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that DON X. BANCROFT, of KINNELON, who was admitted to the Bar of this State in 1968, be publicly reprimanded for his violation of *DR* 6–101(A)(1), neglecting a legal matter, *DR* 7–101(A)(2), failing to carry out a contract of employment, and *DR* 7–101(A)(3), knowingly prejudicing or damaging his client, and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said DON X. BANCROFT as an attorney at law of the State of New Jersey; and it is further

ORDERED that DON X. BANCROFT reimburse the Ethics Financial Committee for appropriate administrative costs.

### *Decision and Recommendation of the Disciplinary Review Board*

This matter is before the Board based upon a presentment filed by the District X (Morris County) Ethics Committee recommending that a public reprimand be issued.

The Board makes the following findings of fact:

In 1973, Respondent was retained by Edward Dwyer, Sr., to represent him and his sons in a civil action wherein they were charged by a neighbor with assault and battery. On July 14, 1975, a trial court, sitting without a jury, held the Dwyers liable and entered judgment against them for $8,500. Respondent believed the amount of the judgment was excessive and, upon his advice, the Dwyers decided to appeal.

A notice of appeal was filed with the Clerk of the Superior Court, Appellate Division, on October 21, 1975. Respondent received the transcript of the trial proceedings on December 11, 1975. In January 1976, he filed a motion with the Appellate Division to extend the time to file the brief. This was granted, with the new deadline being March 5, 1976. By letter dated March 12, 1976, Respondent's adversary advised the Clerk's Office that he had not received a copy of Respondent's brief, or a copy of the trial transcript and suggested that the appeal be dismissed by the court. On its own motion, the Appellate Division on March 17, 1976, notified Respondent the appeal would be dismissed unless good cause was shown on April 6, 1976. On that date, the Appellate Division entered an order dismissing the appeal. On April 27, 1976, Respondent forwarded to his clients a bill for $1,289.40 for costs of printing, binding and covers for the appellate brief, appendix and copies of the exhibits.

On May 11, 1976, Respondent filed a motion to vacate the dismissal and to reinstate the appeal. By letter dated May 19, 1976, the Clerk's Office informed Respondent that his notice of motion was deficient because there was no supporting brief and no acknowledgment of proof of service. These legal papers had to be filed no later than May 26, 1976, with answering papers filed by June 2, 1976. After Respondent forwarded the necessary papers to the Clerk, the Appellate Division, by order dated June 17, 1976, vacated the order dismissing the appeal and reinstated it on condition that Respondent pay a personal sanction of $150. However, the money was not forthcoming from Respondent and the case remained dismissed. By letter dated July 16, 1976, Respondent informed his clients that:

I am sorry to repeatedly bother you with this but I have to have an answer or I will be forced to request a dismissal of the appeal which will make you immediately subject to entry of a Judgment for $8,500.00. I feel like I am in the middle with this appeal and it is not a very comfortable position and you have not given me a great deal of relief. Please, please contact me with regard to this.

By an informal memorandum dated July 21, 1976, Respondent advised his clients that

If I do not hear from you within 24 hours, I will be forced to dismiss the appeal. Please contact me.

The administrative assistant in Respondent's office forwarded the printing bill for $1,289.40 to Respondent's clients, noting that Respondent had had a telephone conversation with them. Respondent received from his clients on August 3, 1976, $789.40, which was due on the transcript invoice. The records of the appellate brief printer contained an entry that $800 had been paid against the clients' account.

By letter dated August 11, 1976, Respondent's administrative assistant sent a copy of the Appellate Division sanction against Respondent to the appellate brief printing company, stating that according to their telephone conversation, the printing company should deduct $150 from the bill. That letter also included a check for $639.40 as partial payment on Respondent's clients' account. On that same day, Respondent's administrative assistant sent a trust account check for $150 to the Clerk's Office in payment of the sanction. By letter dated November 23, 1976, Respondent advised his clients that they still owed money to the printing company, adding they had assured him three months earlier the money would be paid. Respondent advised his clients, by letter dated December 27, 1976, that they had paid $1,089.40 against the total appellate brief bill of $1,289.40. Respondent also stated that of the amount his clients paid, $150 "was used to pay the Appellate Division," with the remaining $934.40 used to reduce the printing bill. He urged them to pay the balance of $350. On January 1, 1977, the clients paid this amount.

Respondent was advised, by letter dated January 31, 1977 from the Clerk's Office, that his appellate papers were deficient because filing dates were not shown on the papers in the appendix and the statement of facts lacked supporting reference to page and line of appendix and transcript. Respondent corrected these deficiencies and forwarded the appropriate doc-

uments to the court on February 9, 1977. The Appellate Division in its review of the file discovered that the transcript of the trial court's opinion of July 14, 1975 was missing. Respondent corrected this deficiency on June 24, 1977. By notice dated September 15, 1977, Respondent was informed that the Appellate Division, on its own motion, would dismiss the appeal for failure to prosecute because the court had not received transcripts of the motion for a new trial and the pretrial settlement records. On September 20, 1977, the Clerk's Office telephoned Respondent concerning the status of this case and suggested he call that office. On the same day, Respondent, by letter, asked the court reporter to expedite this transcript and noted that he had, on many occasions, attempted to contact the reporter about this. On September 27, 1977, the Appellate Division entered an order again dismissing the appeal. The court reporter forwarded the appropriate transcript to the Clerk's Office on October 11, 1977 and noted on the transmittal form that Respondent had requested this transcript on September 30 (sic), 1977. By letter dated October 18, 1977, a staff attorney for the Appellate Division advised Respondent's office that it should immediately file a motion to vacate dismissal of the appeal, along with the deficiency corrections. Nothing further was filed, thus, the appeal remained dismissed. Respondent was advised by letter dated December 16, 1977 that the Appellate Division would destroy the transcript in the appeal unless he notified the court that he wished to obtain it.

In December 1977, the Dwyers were attending the funeral of a close friend when they were informed by the municipal clerk that their home was scheduled to be sold in a sheriff's sale. The Dwyers "about dropped through the floor right then" and replied that the clerk must have been mistaken because there was no action pending against them, except for the civil judgment which they had never been notified to pay. Mr. Dwyer believed that he did not have to pay the judgment unless he lost his appeal. The Dwyers had, however, set aside sufficient funds to pay this in the event the appeal was not successful.

The municipal clerk also informed the Dwyers that her son was going to the sheriff's sale to bid on their home. In the presence of the Dwyers, the Clerk telephoned her son and he read the legal notice to the Dwyers. Mr. Dwyer immediately telephoned Respondent concerning the status of the appeal and was told, for the first time, that the appeal had been "lost." Mr. Dwyer interpreted this to mean that the appeal had been denied on the merits, rather than administratively dismissed. Respondent advised Mr. Dwyer that the judgment would have to be paid. Respondent contacted the plaintiff's attorney and was informed that the balance due as of January 15, 1978 would be $11,-098.87, which included principal, interest and costs of the suit. By letter dated January 13, 1978, Respondent forwarded his clients' check for $10,686.40 to plaintiff's attorney. This amount excluded $412.47 which was listed as execution fees and costs by plaintiff's attorney.

Mr. Dwyer later requested all of the appeal records from Respondent, which he ultimately received. Mr. Dwyer then discovered that his appeal had not been denied by the Appellate Division, but, rather, dismissed as a result of Respondent's failure to provide documentary evidence. Mr. Dwyer contacted the District Ethics Committee and filed a complaint against Respondent on August 3, 1981. Respondent was charged with failing to communicate with his client concerning the status of the appeal, *DR* 1–101 (Count One); failing to have the appeal heard on the merits, *DR* 6–101 and *DR* 7–101 (Count Two); and improperly using his clients' money to pay an Appellate Division sanction, *DR* 1–102 (Count Three). In his answer, Respondent maintained the Appellate Division sanction was not a result of his action, but, rather, that of the appellate brief printing company, which freely acknowledged their error.

At the Ethics Committee hearing, the Dwyers testified that they never instructed Respondent to withdraw the appeal. Respondent, on the other hand, maintained that Mrs. Dwyer was concerned about the escalating cost of the appeal. Her husband informed Respondent not to proceed with the matter. Mr.

Dwyer further noted that he had never received any correspondence from Respondent concerning his appeal. Respondent acknowledged that the Appellate Division sanction was paid out of his clients' monies which were in Respondent's trust account. The Dwyers were never asked by Respondent if he could use these funds to pay the sanction, nor had they authorized the usage. Respondent conceded the necessary motion papers had been prepared and were in his file. They would have enabled the appeal to have been reinstated and to proceed through the appellate process. The Ethics Committee concluded there was no "reasonable or logical explanation" by Respondent for failing to follow the advice of an Appellate Division staff attorney to file a motion to vacate the dismissal of the appeal since Respondent claimed to have had the relevant documents. The Committee found Respondent's handling of the appeal, including the unauthorized expenditure of $150 "transcended mere negligence and reflects adversely on his fitness to practice law." It held Respondent violated DR 1–102(A)(6), DR 6–101(A)(1) and (2), and DR 7–101(A)(2) and (3).

The Committee said even if it accepted Respondent's explanation as to his failure to prosecute the appeal, its conclusion that Respondent was guilty of misconduct would remain unchanged. Respondent failed to inform his client that the appeal was about to be dismissed. The Committee found the Dwyers had desired to prosecute the appeal and concluded Respondent's explanation and conduct were contrary to DR 7–101(A)(2) and (3). It recommended Respondent be publicly reprimanded.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the Ethics Committee in finding unethical conduct on the part of Respondent are supported by clear and convincing evidence.

Respondent's handling of this appeal was grossly deficient especially in view of the simplicity of the case. The notice of

appeal was filed October 9, 1975. The appeal was ultimately dismissed by the Appellate Division on September 27, 1977. As customary, the Appellate Division Clerk's Office rendered every possible assistance to Respondent to perfect this appeal before it was dismissed. Even after dismissal, the Clerk's Office suggested Respondent file a motion to vacate the dismissal. However, Respondent failed to take advantage of this cooperation. In addition, Respondent failed to keep his clients informed as to the progress of the appeal. When the appeal was dismissed, Respondent, knowing that the judgment would be immediately activated, failed to so advise his clients. Only a fortuitous comment to the clients made them aware that their home, which they owned for 29 years, was subject to a sheriff's sale. When confronted by the clients, Respondent again did not candidly reply to their inquiry, but stated the appeal was "lost" in the Appellate Division, conveying the impression the Appellate Division had ruled on the merits.

■■ After carefully reviewing the record, the Board cannot find, by clear and convincing evidence, that Respondent knowingly paid the Appellate Division sanction with his clients' funds. The transmittal letter to the Court was signed by an administrative assistant in Respondent's law firm, and the copy of the check marked into evidence in this proceeding appears to be unsigned. However, the use of his client's trust funds to pay this sanction was not in compliance with required appellate practice. *Rule* 2:9–9 specifically states that these sanctions are to be "assessed personally against the attorney." The proofs in this case did not meet the clear and convincing evidence standard that Respondent deliberately shifted this cost to his clients. According to Respondent, the printer was to deduct $150 from the Dwyer account and, in effect, pay the sanction. The Board believes that a better practice in this situation would have been for Respondent to have paid the sanction from his office account and then to have made whatever accounting adjustments were required directly with the party responsible. Trust funds should not be utilized.

■ The Board concludes Respondent's handling of this appeal exceeded

mere negligence. His conduct was grossly short of the requirements of minimally acceptable representation and was such as to reflect adversely on his fitness to practice law. *DR* 1–102(A)(6) [*In re Logan*, 71 *N.J.* 583, 586 (1976)].

Respondent violated *DR* 6–101(A)(1), by neglecting a legal matter entrusted to him in such a manner that his conduct constituted gross negligence, *DR* 7–101(A)(2), by failing to carry out a contract of employment and *DR* 7–101(A)(3) by knowingly prejudicing or damaging his client in failing to perfect the appeal.

■ The Board concurs with the Ethics Committee that even if Respondent's explanation were accepted, his conduct still would be unacceptable in that he failed to inform the clients that their appeal was about to be dismissed. He also failed to promptly advise them of the actual dismissal. In *In re Rosenthal*, 90 *N.J.* 12 (1982), the court stated that

[e]ven if a client tells her attorney that she no longer intends to prosecute a claim, the attorney should inform the client of an imminent dismissal. It is always possible for a client to change her mind. Even if such a possibility is remote, clients have a right to be informed of the progress of the case [*Id.* at 16].

■ In assessing the appropriate discipline, the board remains mindful that our purpose is to protect the public from the attorney who does not meet the standards of responsibility of every member of the profession. *Matter of Templeton*, 99 *N.J.* 365, 374 (1985); *In re Goldstaub*, 90 *N.J.* 1, 5 (1982).

Respondent has been a member of the Bar since 1968 and should have been aware of his responsibilities to a client and the court. The Board also considered that Respondent has received two private reprimands in 1980 and 1981.

Nevertheless, the quantum of discipline must accord with the seriousness of the misconduct in light of all the relevant circumstances. *In re Nigohosian*, 88 *N.J.* 308, 315 (1982). The facts underlying this matter occurred in 1975–77, prior to Respondent's other disciplinary infractions. This complaint, filed in

August 1981, was received by the Board in September 1983, but was held in abeyance in accordance with Supreme Court policy to consider an attorney's conduct in its totality. The Board believes that the public interest in prompt discipline and deterrent quality thereof has been necessarily diminished. *In re Verdiramo*, 96 *N.J.* 183, 187 (1984). Suspension, at this juncture, is not warranted.

Based on the totality of the circumstances, a five-member majority of the Board recommends that Respondent be publicly reprimanded. Two members recommend a private reprimand. Two members did not participate.

The Board further recommends Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.