IN THE MATTER OF DAVID S. LITWIN, AN
ATTORNEY AT LAW.

Argued September 9, 1986—Decided November 20, 1986.

*Robyn M. Hill,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Burton L. Eichler* argued the cause for respondent (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Burton L. Eichler* and *Todd C. Brower,* on the brief).

PER CURIAM.

Respondent entered a plea of guilty to a charge of aggravated arson, *N.J.S.A.* 2C:17-1(a)(2), a second-degree crime. This disciplinary proceeding arose from a motion for final discipline based upon a criminal conviction against respondent that was filed with the Disciplinary Review Board (DRB) by the Office of Attorney Ethics requesting that respondent be disbarred. Respondent entered into a consent order temporarily suspending him from the practice of law effective July 31, 1981. The DRB has recommended, by a vote of 6-2, that respondent be suspended from the practice of law for five years retroactive to July 31, 1981. Our independent review of the record leads us to accept that recommendation.

I

Respondent was admitted to the New Jersey Bar in 1968. He served as an attorney in both the private and public sectors until 1978. While he was actively engaged in the practice of law, he was never the subject of any disciplinary action or ethical complaint.

In 1978 respondent left the practice of law and entered a partnership to operate a car wash in Newark. During the following year, Mr. Litwin on his own, commenced operation of a second car wash in Plainfield, New Jersey, which car wash was the subject of respondent's act of arson in 1981. The DRB accurately sets forth the relevant facts surrounding this act in its Decision and Recommendation:

> On July 30, 1981 he entered his Plainfield car wash building about 10 p.m. and set fire to the building. Respondent had decided to burn down his business because he had reached a point where
>
> > I saw the world as having a choice for myself or burn the place down, as my perception of what would happen was very confused, I totally lost objectivity, perceptivity....
>
> Respondent was arrested that same night and was hospitalized. His condition was diagnosed as severe depression with suicidal tendencies and personality disorder.
>
> Respondent was sentenced on March 19, 1982. His attorney stated that Respondent would be institutionalized for at least 18 months in an in-patient program in Kansas. He had not submitted any insurance claim, nor had he received any benefit from his act. Respondent told the court that his "motivation was completely irrational. It was not a sane act." The sentencing judge stated that
>
> > I find that about that time you became preoccupied with the thought of arson and eventually [sic] lost the ability to control your thoughts and actions. You were lead [sic] to deliberately set a fire to that business property. It was not an incident where that was done for the traditional buck or out of a vendetta to any other party or for financial gain to yourself.
>
> The judge agreed with the prosecutor that no useful purpose would be served by incarcerating Respondent due to Respondent's need for long term psychoanalytic care. The judge placed Respondent on five years probation with the condition he undergo psychiatric treatment until the court approved his release. Respondent also was ordered to pay $7,000 in restitution.
>
> Respondent entered into a consent order temporarily suspending him from the practice effective July 31, 1981. See 93 N.J. 593 (1983).
>
> Respondent was discharged as an in-patient on July 18, 1984 but continues with out-patient therapy. He now resides in Kansas and has no intention of returning to New Jersey or the private practice of law.

## II

A criminal conviction of an attorney is conclusive evidence of guilt in a disciplinary proceeding. *R.* 1:20–6(b)(1). Once an attorney is convicted, the sole issue to be considered is the

measure of discipline to be imposed. *In re Kushner,* 101 *N.J.* 397, 400 (1986); *In re Addonizio,* 95 *N.J.* 121, 123–24 (1984); *In re Infinito,* 94 *N.J.* 50, 56 (1983); *In re Rosen,* 88 *N.J.* 1, 3 (1981); *In re Mirabelli,* 79 *N.J.* 597, 602 (1979); *In re Mischlich,* 60 *N.J.* 590, 593 (1977). In disciplinary hearings, the Court's goal is to protect the interests of the public and the bar while giving due consideration to the interests of the individual involved. *In re Infinito, supra,* 94 *N.J.* at 57; *In re Mischlich, supra,* 60 *N.J.* at 593. The appropriateness of the discipline depends on many factors. We consider the nature and severity of the crime and whether the crime is related to the practice of law. Because a criminal conviction is given conclusive effect, we do not make an independent examination of the underlying facts supporting the conviction. We do consider, however, "evidence which does not dispute the crime but which shows mitigating circumstances [relevant to] the issue of whether the nature of the 'conviction merits discipline, and if so, the extent thereof.' " *In re Infinito, supra,* 94 *N.J.* at 57 (quoting *In re Mischlich,* 60 *N.J.* at 593) (citations omitted).[1] Similarly, we deem relevant such facts as respondent's good reputation, prior trustworthy professional conduct, and general good character.

---

[1]Rule 1:20–6(b)(2)(ii), adopted January 31, 1984, effective February 15, 1984, codifies prior law and provides, in pertinent part, that consideration in a final disciplinary action can be given only to:

> relevant evidence in mitigation that is not inconsistent with the essential elements of the criminal matter for which the attorney was convicted as determined by the statute defining the criminal matter.

The Supreme Court Attorney Disciplinary Structure Committee in its 1982 Report proposed this rule and stated in its commentary to the rule, *Additionally, paragraph 4 of the proposed rule further implements the commentary to the American Bar Association Standard 9.4 in detailing the exact nature of evidence which is permissible at a disciplinary proceeding based upon the fact of criminal conviction. Such a specification is in accordance with existing New Jersey law. In re Mischlich,* 60 *N.J.* 590, 592–593 (1972), *In re LaDuca,* 62 *N.J.* 133, 136 (1973) and *In re Mirabelli,* 79 *N.J.* 597, 601–602 (1979). Attorney Disciplinary Structure Committee Report, *N.J.L.J.* 4 (June 9, 1983).

*In re Kushner, supra,* 101 *N.J.* 397, 400–01 (1986); *In re Infinito, supra,* 94 *N.J.* at 57; *In re Mischlich,* 60 *N.J.* at 593.

### III

Each disciplinary action is factually different and must be judged on its merits. Based on our independent review of the record applying the above criteria to this case, we agree with the DRB that respondent's conviction establishes that he had engaged in illegal conduct that adversely reflects on his fitness to practice law. *DR* 1–102(A)(3).[2]

Prior to this offense respondent had an unblemished professional reputation. This crime, respondent's sole transgression, is serious. He set fire to his own business, causing property damage to the owners of the building. No one was injured in the fire.

In recommending that respondent be suspended from practice for five years, the DRB considered the following mitigating factors:

> Important in assessing this case is Respondent's mental condition at the time of the incident. A review of this element is not to retry the criminal charge but to determine the appropriate attorney discipline. See *In re Rosen,* 88 *N.J.* 1, 3 (1981) citing *In re Mirabelli,* 79 *N.J.* 597, 602 (1979); *In re LaDuca,* 62 *N.J.* 133, 136 (1973). Among the recommended mitigating factors by the American Bar Association are "personal or emotional problems" and "physical or mental disability or impairment." *See ABA Standards for Imposing Lawyer Sanctions;* (final draft, December 1985,) at 21. These mitigating factors are not to excuse the attorney's misconduct but to understand the reasons for it. Rather than ignore such factors, the Board believes the better practice is to consider them and weigh them against aggravating factors. This assessment would consider the interest of the public, the bar and the individual involved. *In re Kushner, supra* [101 *N.J.* at 400]; *In re Infinito, supra,* 94 *N.J.* at 57; *In re Mischlich,* 60 *N.J.* 590, 593 (1972).

---

[2]Effective September 10, 1984, the Rules of Professional Conduct of the American Bar Association, as modified by this Court, govern the conduct of the members of the bar of this State. *R.* 1:14. Respondent's actions occurred prior to this date, and are consequently governed by the Disciplinary Rules then in force. Respondent's behavior is equally violative of RPC 8.4(b), the analogous provision of the Rules of Professional Conduct.

In mitigation Respondent submitted certifications by psychiatrists as well as himself relating to his mental condition at the time of the incident. Respondent explained that when he decided to attempt the arson, he felt "absolutely invincible, if not almost invisible." He realized that he had been observed at the scene but this did not deter him. Respondent further stated that while he felt he was very ill at the time, he accepts responsibility for his actions and is remorseful. The psychiatric certifications conclude that Respondent had suffered from acute depression with suicidal tendencies. Respondent was described as being in a "disordered state of mind of psychotic proportions." The sentencing judge, who had the benefit of a presentence report which the petitioner did not include among the moving papers to this Board, concluded that Respondent had lost the ability to control his thoughts and actions. The Board agrees with the criminal court that Respondent's mental condition at the time of the crime is a mitigating factor which must be considered.... According to his psychiatrist, Respondent has been successfully rehabilitated. In addition, he has performed volunteer work in a program in Kansas for abused and neglected children and is now a volunteer member of that program's board of directors. He also was appointed by the Governor of Kansas to the Kansas Commission on Child Support. Respondent does not intend to return to New Jersey or actively practice law. He does, however, intend to seek admission to the Kansas bar so he can advance in his employment. He has been a member of the bar of this state since 1968 and had practiced law for ten years before going into business. His legal career included a clerkship with the Supreme Court, substantial service with the State Attorney General's Office and appointment as a hearing officer for the Department of Civil Service. He has no prior disciplinary history. Restitution as ordered by the criminal court was made and the civil claims against Respondent have been settled. No claim to collect insurance was ever filed by Respondent.

In determining the appropriate discipline, we, as did the DRB and the sentencing Court, deem it appropriate to consider respondent's mental condition at the time of the offense.[3] We do not consider this evidence to relitigate his guilt. There is no dispute that he committed the crime of aggravated arson. Instead, we consider such evidence as a mitigating factor to be

---

[3]The trial court in sentencing the respondent recognized the significance of respondent's mental condition when it imposed on respondent following his guilty plea to aggravated arson a five year term of probation conditioned on his undergoing psychiatric treatment at Menninger Clinic in Kansas until his discharge was approved by the court. Immediately after he committed his offense, respondent was committed to Fair Oaks Hospital until March 23, 1983 when he transferred to Menninger Clinic where he remained an in-patient until his discharge on July 18, 1984. He continues to receive out-patient treatment at the Clinic.

weighed with the other mitigating and aggravating factors, as we determine the appropriate discipline that will adequately protect the bar and the public while not unduly or unfairly punishing respondent. *See In re Addonizio, supra,* 95 *N.J.* 121 (attorney pled guilty to acts of lewdness and carnal indecency; in not disbarring him we considered that illness motivated his behavior, that it was an isolated aberrational instance, and that he pleaded guilty); *In re Esposito,* 96 *N.J.* 122, 132 (1984) (mitigating factors that attorney's crime was not for personal gain and that he was under severe emotional distress warranted imposition of six-month suspension for conviction for failure to pay income tax); *In re Mirabelli, supra,* 79 *N.J.* 597, 602 (mitigating factors of attorney's years of unblemished service, evidence of his good name and integrity, consideration of the effects upon his emotional stability caused by his marital problems, and his concession of guilt and cooperation with the ethics machinery warranted imposition of three years suspension for conviction of bribery, and not disbarment).

Respondent's act of arson was an aberration. It was not a conspiracy or scheme, not engaged in for gain and not related to the practice of law. We distinguish this case from *In re Ivler,* 86 *N.J.* 398 (1981), where we disbarred a lawyer who was convicted on charges arising from the arson (dynamite bombing) of a spa. Ivler was convicted of (1) receiving and possessing an unregistered firearm (dynamite); (2) submitting fraudulent claims to four insurance companies through the mail; (3) using an explosive in the commission of a federal crime; and (4) conspiracy to commit all of the above. Ivler participated in the planning of the bombing and the submission of the fraudulent claims. *See also In re Alosio,* 99 *N.J.* 84 (1985); *In re Toplitt,* 63 *N.J.* 240 (1973); and *In re Perrella,* 57 *N.J.* 98 (1970), where attorneys convicted of conspiracy to defraud insurance companies were disbarred. In all these cases, the crimes were directly related to the practice of law, and the attorneys' conduct involved dishonesty, fraud, deceit and greed. None of these motives is present in this case.

Here, the record does not support the conclusion that respondent's conduct was based on dishonesty, venality, or immorality. Respondent's misconduct does not lead to the conclusion that his "good character and fitness have been permanently or irretrievably lost," *In re Templeton*, 99 *N.J.* 365, 376–77 (1985), so as to warrant disbarment. Respondent has established that he is rehabilitated and living a useful life. For all these reasons, we conclude that respondent should be suspended from the practice of law for five years retroactive to July 31, 1981.

We further direct respondent to reimburse the Ethics Financial Committee for costs, including but not limited to the cost of producing transcripts.

So ordered.

## ORDER

It is ORDERED that DAVID S. LITWIN of MAPLEWOOD, who was admitted to the bar of this State in 1968, be suspended from the practice of law for a period of five years, retroactive to July 31, 1981, and until the further order of this Court; and it is further

ORDERED that DAVID S. LITWIN reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that DAVID S. LITWIN be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that DAVID S. LITWIN comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended attorneys.

O'HERN, J., concurring.

I concur in the Court's disposition of this matter. I write separately to express my views with respect to attorney discipline.

I dissented from the Court's imposition of a suspension in *In re Infinito*, 94 *N.J.* 50 (1983), because I could not find a satisfactory basis to distinguish that case from *In re Hughes*, 90 *N.J.* 32 (1982), in which the Court disbarred an attorney for conviction of a crime of dishonesty.

I believed at the time *In re Infinito, supra,* was decided that the Court should have a consistent principle that would require disbarment of attorneys convicted of crimes of the first or second degree, or crimes involving acts of dishonesty. *See R.* 1:20-6 (calling for automatic temporary suspension of attorneys convicted of serious crimes, which are defined as crimes of the first or second degree or those involving dishonesty).

I rejoined the majority in *In re Verdiramo*, 96 *N.J.* 183 (1984), because I believed the Court had stated a new principle of law, applicable to cases arising after that date, that conviction of serious crimes, especially those involving dishonesty, would almost invariably warrant disbarment. This case arises before *In re Verdiramo* because the criminal offenses occurred in 1981. I would not apply *Verdiramo* retroactively, and thus agree that because of the prior inconsistency of our precedent, a suspension is justified.

*For suspension*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.