IN THE MATTER OF JOHN P. RUSSELL AN
ATTORNEY–AT–LAW.

April 25, 1988.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that JOHN P. RUSSELL, of JERSEY CITY, who was admitted to the Bar of this State in 1965, be publicly reprimanded for violations of *DR.* 2–110(A)(2) by improperly withdrawing as counsel for his client and *DR.* 7–101(A)(2) and (3) in failing to carry out a contract of employment and improperly withdrawing from representing his client resulting in prejudice or damage to the client, thereby engaging in conduct that adversely reflected on his fitness to practice law, in violation of *DR.* 1–102(A)(6), and good cause appearing;

It is ORDERED that the findings of the Disciplinary Review Board are hereby adopted and respondent is publicly reprimanded; and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this order and the full record of the matter, be added as a permanent part of the file of said JOHN P. RUSSELL as an attorney at law of the State of New Jersey; and it is further

ORDERED that JOHN P. RUSSELL reimburse the Ethics Financial Committee for appropriate administrative costs.

## APPENDIX

### *Decision and Recommendation of the Disciplinary Review Board*

This matter is before the Board based on a presentment filed by the District VI (Hudson County) Ethics Committee.

In June 1977, respondent represented Carmine L. Trangone in a civil trial for malicious prosecution and false arrest filed against Mr. Trangone's employer. On June 14, 1977, the jury returned a verdict in favor of Mr. Trangone in the amount of $82,000 ($75,000 in damages plus $7,000 in pre-judgment interest). Following the entry of the verdict, Mr. Trangone's employer filed a motion for a judgment *n.o.v.* Respondent filed a brief in opposition and engaged in oral argument on July 8, 1977. The trial court granted the motion at the conclusion of oral argument and entered a formal order to that effect on July 18, 1977.

Upon hearing the Court's decision granting the motion, respondent agreed to file an appeal on Mr. Trangone's behalf. On or about August 10, 1977, after having received his client's check in the amount of $675 to cover transcript costs, respondent filed a notice of appeal and the transcript with the Clerk of the Appellate Division. However, after conducting some initial research and discussing the matter with several other attor-

neys, respondent concluded that the appeal was without merit. Consequently, no brief was ever filed.

During the course of the next ten months, Mr. Trangone called respondent approximately ten to fifteen times. The parties disagree as to whether or when respondent informally advised Mr. Trangone that he did not wish to pursue the matter any further. It is clear, however, that respondent failed to convey formally this decision in writing to the court, his adversary, or client. In any event, the deadline for the filing of the brief passed and on May 12, 1978 the Appellate Division filed a motion to dismiss the appeal for lack of prosecution. Respondent failed to oppose the motion. On June 6, 1978, the appeal was formally dismissed. Respondent never attempted to have the appeal reinstated.

Mr. Trangone called respondent for the last time in February or March 1979, approximately six months after the appeal had been dismissed. According to Mr. Trangone, it was during this conversation he learned for the first time that his appeal had been dismissed, though the reasons were not given. Thereupon, Mr. Trangone advised respondent that he wanted another attorney to review the case and asked for his file. Around March 10, 1979, Mr. Trangone obtained the file, which he claimed contained no documentation or information concerning the dismissal of the appeal.

In November 1979, Mr. Trangone retained new counsel. Although counsel succeeded in having the appeal reinstated, the Appellate Division ultimately affirmed the judgment of the trial court judge.

Based upon the foregoing, the committee found that respondent had violated *DR* 7–101(A)(2) and (3) in that he had failed to carry out a contract of employment and improperly had withdrawn from representing his client, resulting in prejudice or damage to the client. The committee further found that respondent had violated *DR* 1–102(A)(6) in that he had engaged in

conduct that adversely reflected on his fitness to practice law. Consequently, the committee recommended public discipline.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusions of the committee in finding the respondent guilty of unethical conduct are fully supported by clear and convincing evidence.

Upon being retained by Mr. Trangone, respondent owed him a duty to pursue his interest diligently. See, *Matter of Schwartz,* 99 *N.J.* 510, 519 (1985); *Matter of Haft* 98 *N.J.* 1, 7 (1984); *In re Goldstaub,* 90 *N.J.* 1, 5 (1982). Having undertaken to represent this client, he could not withdraw from employment without properly advising his client of his intention to do so. *Matter of Schwartz, supra,* 99 *N.J.* at 519.

Former *DR* 2–110(A)(2) provides that "a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules." It is clear that respondent violated this disciplinary rule which was then in effect. The record indicates that with the exception of some initial activity, respondent disregarded his obligation to his client. Although respondent filed a notice of appeal and ordered the transcript, after conducting some research and discussing the matter with other attorneys, respondent unilaterally decided not to pursue the appeal. While respondent claims that he told Mr. Trangone he had decided not to proceed any further, there is a dispute whether or not this decision was orally conveyed to his client. There is no question, however, that respondent did not convey this decision in writing to the court, his adversary or his client. Once an attorney states that he is going to perform services for a client, he has an affirmative obligation to notify his client that

he intends to withdraw. *DR* 2–110(A)(2); *Matter of Schwartz, supra*, 99 *N.J.* at 519. Respondent failed to satisfy this obligation.

Moreover, respondent unnecessarily jeopardized his client's rights when there was little more for him to do to perfect the appeal. He had previously prepared a brief in opposition to the motion for a judgment *n.o.v.* As his counsel argued, "it would have been quite simple for him to prosecute this appeal by just redoing that particular brief that had been done by him already." [2T8–2 to 5].[1] Yet, he did nothing, "because I thought that [Mr. Trangone] would accept what I had to say and forget about it because there was no merit to it." [1T44–22 to 24].[2] Although Mr. Trangone was an "old friend," respondent did not follow through to ensure that Mr. Trangone had the opportunity to retain another attorney. Rather, he left his client unprotected and allowed the Appellate Division to dismiss the appeal for lack of prosecution. Moreover, he failed to advise Mr. Trangone of the Court's action.

The purpose of disciplinary proceedings is not the punishment of the offender, but "protection of the public against the attorney who cannot or will not measure up to the high standards of responsibility required of every member of the profession." *In re Getchius*, 88 *N.J.* 269, 276 (1982), citing *In re Stout*, 75 *N.J.* 321, 325 (1978). In this regard, the Board is cognizant of the fact that respondent had been disciplined for unethical conduct on two prior occasions. In 1971, seven years after he was admitted to practice in this state, respondent received a "severe reprimand" for giving legal advice to two prospective witnesses in a grand jury proceeding when he represented clients with conflicting interests. He knew that

[1]2T refers the transcript of proceedings before the Disciplinary Review Board November 18, 1987.

[2]1T refers to the transcript of proceedings before the District VI Ethics Committee May 13, 1982.

the two persons were not only represented by counsel, but that his advice was sharply contrary to the advice they had previously received. *In re Russell*, 59 *N.J.* 315, (1971). Five years later, in 1976, respondent received a private reprimand for misleading a judge regarding his representation of clients in two separate cases and allowing office staff to sign pleadings. Ordinarily, based upon the foregoing, the imposition of a period of suspension for his current unethical behavior would not be inappropriate.

However, the extended length of time between the date the infraction occurred and its final disciplinary disposition is a mitigating factor. *Matter of Stier*, 108 *N.J.* 455, 460 (1987); *Matter of DiBiasi*, 102 *N.J.* 152, 155 (1986). Here, the Board is aware that the unethical conduct currently being considered occurred approximately ten years ago. While the matter was heard by the District Ethics Committee in 1982 guidelines concerning the hearings of presentments while other matters remain open precluded the Board from considering this matter sooner.[3] "[T]he public interest in proper and prompt discipline is necessarily and irretrievably diluted by the passage of time." *In re Verdiramo*, 96 *N.J.* 183, 187 (1984).

The Board finds that although respondent's previous disciplinary history would ordinarily militate in favor of a stronger sanction, the extended length of time between the date of the unethical conduct (as well as the prior discipline) and the Board's consideration of same is a significant mitigating factor. Accordingly, seven members of the Board recommend that respondent be publicly reprimanded. Two members of the Board would impose only a private reprimand.

The Board further recommends that respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.

---

[3]See the Ethical History Record prepared by Board Counsel dated October 27, 1987.