744 A.2d 158

IN THE MATTER OF JAMES F. BOYLAN,
AN ATTORNEY AT LAW.

Argued October 26, 1999—Decided January 28, 2000.

*Richard J. Engelhardt,* Assistant Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Albert B. Jeffers,* argued the cause for respondent.

PER CURIAM.

This attorney disciplinary proceeding arises from a motion for final discipline, based upon a criminal conviction, filed by the Office of Attorney Ethics (OAE) before the Disciplinary Review Board (DRB) pursuant to *Rule* 1:20–13(c). The DRB concurred in the OAE recommendation that James F. Boylan (respondent) be disbarred from the practice of law. The motion was based on respondent's guilty plea in federal court to one count of mail fraud in violation of 18 *U.S.C.A.* § 1343. In ethical proceedings, the conviction of a criminal offense conclusively establishes guilt of the offense charged. *In re Lunetta,* 118 *N.J.* 443, 445, 572 *A.*2d 586 (1989) (citing *R.* 1:20–6(b)(1)). In assessing the measure of discipline to be imposed, we may consider background facts and circumstances. *In re Spina,* 121 *N.J.* 378, 389, 580 *A.*2d 262 (1990). We draw those background facts and circumstances from presentence reports, plea agreements, and other reliable documentation surrounding the conviction.

## I.

From the record in this case we discern the following facts. The respondent was admitted to the bar in 1988. From 1994 to 1997, respondent served as Jersey City Municipal Court Judge presiding over cases involving motor vehicle violations. In his federal sentencing proceedings, respondent acknowledged that he engaged in a scheme to defraud the City of Jersey City of money and property by reducing traffic violation fines and penalties for female defendants, coaching the defendants to lie in open court about the circumstances of their tickets and using these false statements as a factual basis to justify reductions in their fines and penalties. He acknowledged that he solicited sexual favors from these defendants and that the City of Jersey City had lost over $10,000 in fines and penalties as a result of the scheme. Following his plea of guilty to the use of the mails to perpetrate the fraud, he was sentenced to 30 months in prison and 3 years probation and ordered to make restitution to Jersey City.

## II.

In determining the appropriate discipline, we consider the interests of the public, the bar, and the respondent. *In re Litwin,* 104 *N.J.* 362, 365, 517 *A.*2d 378 (1986); *In re Mischlich,* 60 *N.J.* 590, 593, 292 *A.*2d 23 (1972). The appropriate discipline depends on many factors, including the "nature and severity of the crime, whether the crime is related to the practice of law, and any mitigating factors such as respondent's reputation, his prior trustworthy conduct, and general good conduct." *In re Lunetta, supra,* 118 *N.J.* at 445–46, 572 *A.*2d 586; *In re Kushner,* 101 *N.J.* 397, 400–01, 502 *A.*2d 32 (1986). Although we do not make an independent examination of the underlying facts to ascertain guilt, we do consider them relevant to the nature and extent of discipline to be imposed. *In re Goldberg,* 105 *N.J.* 278, 281, 520 *A.*2d 1147 (1987); *In re Rosen,* 88 *N.J.* 1, 3, 438 *A.*2d 316 (1981).

The goal of disciplinary proceedings is not to punish, but to protect the interests of the public and the bar, mindful of the concerns of the individual involved. *In re Infinito,* 94 *N.J.* 50, 57, 462 *A.*2d 160 (1983); *In re Mischlich, supra,* 60 *N.J.* at 593, 292

A.2d 23; *In re Pennica*, 36 *N.J.* 401, 418–19, 177 *A.*2d 721 (1962). We have, however, recognized that "[c]ertain types of ethical violations are, by their very nature, so patently offensive to the elementary standards of a lawyer's professional duty that they *per se* warrant disbarment." *In re Conway*, 107 *N.J.* 168, 180, 526 *A.*2d 658 (1987). There are certain acts by attorneys that so impugn the integrity of the legal system that disbarment is the only appropriate remedy. *In re Hughes*, 90 *N.J.* 32, 37, 446 *A.*2d 1208 (1982); *In re Wilson*, 81 *N.J.* 451, 453, 409 *A.*2d 1153 (1979). These include, for example, any attempt to corrupt the judicial process by an attorney suborning perjury or tampering with witnesses to fix a case, *In re Conway, supra*, 107 *N.J.* at 170, 526 *A.*2d 658, or assisting others in such efforts, *In re Rigolosi*, 107 *N.J.* 192, 208, 526 *A.*2d 670 (1987), or bribing a police officer, *In re Hyett*, 61 *N.J.* 518, 537, 296 *A.*2d 306 (1972), or bribing a public official, *In re Tuso*, 104 *N.J.* 59, 64–65, 514 *A.*2d 1311 (1986), or bribing an I.R.S. agent, *In re Hughes, supra*, 90 *N.J.* at 36, 446 *A.*2d 1208, or by a judge accepting a bribe and not sentencing a defendant according to the law, *see In re Coruzzi*, 98 *N.J.* 77, 80, 484 *A.*2d 667 (1984). "Misconduct of this stripe conclusively renders the wrongdoer unworthy of the profession." *In re Conway, supra*, 107 *N.J.* at 182, 526 *A.*2d 658.

▆▆▆ The Court has consistently subjected attorneys who commit acts of serious misconduct while serving in public office to stringent discipline, normally disbarment. *See, e.g., In re Coruzzi, supra*, 98 *N.J.* at 80, 484 *A.*2d 667. Therefore, it is appropriate to discipline an attorney for conduct as a judge if the conduct itself corrupts the judicial process or evidences a lack of the character and integrity that are necessary in an attorney. Conduct by a judge may require disbarment if that conduct demonstrates such untrustworthiness, dishonesty or lack of integrity that the public must be protected from such a person as a lawyer.

### III.

Respondent's able counsel has acknowledged the weight of our precedent, but urges that we remand the matter to consider evidence in mitigation. Our Court Rules anticipate disciplinary

proceedings that follow a respondent's criminal convictions. *Rule*
1:20–6(b)(2)(ii) states:

> The sole issue to be determined shall be the extent of final discipline to be imposed. At the date set for oral argument by the Board or the Court any relevant evidence in mitigation that is not inconsistent with the essential elements of the criminal matter for which the attorney was convicted as determined by the statute defining the criminal matter shall be admissible. No witnesses shall be allowed and no oral testimony shall be taken; however, both the Board and the Court may consider written materials otherwise allowed by this rule that are submitted to it. Either the Board or the Court, upon the showing of good cause therefore or on its own motion, shall remand a case to a Committee for a limited evidentiary hearing and report consistent with this subsection.

This rule codified long-standing case law to the same effect. *In re Addonizio,* 95 *N.J.* 121, 123, 469 *A.*2d 492 (1984); *In re Infinito, supra,* 94 *N.J.* at 57, 462 *A.*2d 160; *In re Mischlich, supra,* 60 *N.J.* at 593, 292 *A.*2d 23; *In re Isserman,* 9 *N.J.* 269, 277, 87 *A.*2d 903 (1952).

■ We have carefully considered respondent's argument that he should be afforded the opportunity to present matters of mitigation as a matter of constitutional right. He asserts that the DRB denied him the opportunity to present evidence in mitigation of the penalty based on respondent's dependency on alcohol during the conduct and the trial of his case. Although there may have been some misunderstanding between counsel and the DRB concerning whether respondent could offer evidence in mitigation that might avoid the penalty of disbarment, we are satisfied that no useful purpose would be served by a remand in this case. So deep and so profound is the impugnment of the integrity of the legal system that disbarment is the only appropriate penalty. In the analogous context of violations of *In re Wilson, supra,* 81 *N.J.* 451, 409 *A.*2d 1153, we have concluded that impulse control disorders, whether arising from alcoholism, drug dependency or compulsive gambling, will not mitigate the almost invariable sanction of disbarment in the absence of "a loss of competency, comprehension or will ... of such magnitude that it would excuse or mitigate conduct that was otherwise knowing and purposeful." *In re Lobbe,* 110 *N.J.* 59, 61, 539 *A.*2d 729 (1988) (quoting *In re Hein,* 104 *N.J.* 297, 302, 516 *A.*2d 1105 (1986)). We concluded "that dependent attorneys retain an area of volition sufficient that

we cannot distinguish these attorneys from those who yield to the equally human impulses to avert shame, loss of respect, or family suffering." *Id.* at 66, 539 *A.*2d 729.

In *In re Yaccarino,* 117 *N.J.* 175, 564 *A.*2d 1184 (1989), we considered new evidence (concerning judicial removal proceedings) that could be weighed and considered, together with other evidence previously submitted. We nonetheless concluded that the proofs were simply insufficient to excuse the misconduct. *Id.* at 196–97, 564 *A.*2d 1184. We observed that the evidence did not serve to mitigate the gravity of the respondent's ethics breaches. We emphasized that he had functioned well and efficiently with respect to his regular judicial responsibilities during the many months that he served on the bench. So too here.

We acknowledge the debilitating effect of the disease of alcoholism but the disease does not here equate with a loss of comprehension, competency or will sufficient to mitigate the misconduct charged.

## IV.

We order the disbarment of respondent. Respondent shall reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For disbarment*—Chief Justice PORITZ and Justices O'HERN, GARIBALDI, STEIN, COLEMAN, LONG and VERNIERO—7.

*Opposed*—None.

## ORDER

It is ORDERED that **JAMES F. BOYLAN** of **JERSEY CITY**, who was admitted to the bar of this State in 1988, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that **JAMES F. BOYLAN** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that **JAMES F. BOYLAN** comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that **JAMES F. BOYLAN** reimburse the Disciplinary Oversight Committee for appropriate administrative costs.