IN THE MATTER OF RUDOLPH V. ALOSIO, AN
ATTORNEY AT LAW.

April 30, 1985.

## ORDER

The Disciplinary Review Board having filed a report recommending that RUDOLPH V. ALOSIO of SAN DIEGO, CALIFORNIA be disbarred for his criminal conviction of presenting a false insurance claim and six counts of receiving stolen property in California, and he, by his attorney, having waived his right to oral argument on this matter, and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted; and it is further

ORDERED that RUDOLPH V. ALOSIO be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that RUDOLPH V. ALOSIO be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

### Decision and Recommendation of the Disciplinary Review Board

This matter is before the Board on a Motion by the Office of Attorney Ethics for final disciplinary action. It is based upon Respondent's conviction of one count of presenting a false insurance claim and six counts of receiving stolen property in California.

Respondent was admitted to the Bar of New Jersey in 1960. He moved to California in 1969. He is not a member of the Bar of California. The facts of this case are summarized as follows:

On March 25, 1983, the Santa Monica police received a telephone call from the owner of Vaughn Printing Company that Respondent, using the name of Harry Halton, wanted him to print 200 English vehicle registration documents, including the English crown seal. Law enforcement agents staked out the print shop and saw Respondent hand the owner between $90 and $100, which was the second installment and final payment for the registrations. Respondent and the man with him were immediately arrested. The investigation disclosed that Respondent had previously had a graphics artist prepare the British ownership certificate design which he then took to the print shop.

Investigators from the California Department of Motor Vehicles on March 31, 1983 obtained a search warrant to search Respondent's home and vehicles. They found eight separate envelopes containing addresses, ignition and garage keys, and other information which led to the recovery of eight stolen cars, three Rolls Royces, two Ferraris, two Porsches and one Mercedes Benz, having a total estimated value of $500,000. One car was recovered from a repair shop in Van Nuys on April 7, 1983. On the following day, two additional cars were recovered from a home in Sun Valley where the homeowner was preparing to repaint them for Respondent. The vehicle identification number (VIN) plates had been removed from each of these cars. Police determined that Respondent intended to manufacture new VIN plates which had not been entered into the stolen vehicle system. Five of the cars were found in three garages rented by Respondent under the name of Harry Halton or Harry Hilton. Police also determined that Respondent had fraudulently reported the theft of his car, a 1970 Porsche, to his insurance company and received $50,094.50. This car was later recovered in a damaged condition.

On April 21, 1983, Respondent was charged in a California complaint with eight counts of grand theft, eight counts of receiving stolen property, and one count each of presenting a fraudulent claim to an insurance company, altering a certificate of ownership, and possessing a counterfeit or genuine manufacturer's vehicle serial or identification number plate. On May 17, 1983, Respondent pleaded guilty to seven counts of the complaint against him. He pleaded guilty to one count of presenting a false and fraudulent claim to his insurance company on February 17, 1983 and receiving $50,094.50. He also pleaded guilty to six counts of receiving stolen property: three Rolls Royces and one Mercedes, Porsche, and Ferrari. He was sentenced by the Superior Court of Los Angeles County on October 13, 1983 to three years in the state prison. The remaining counts of the complaint were dismissed.

Respondent maintained that he had exercised bad judgment when he became involved with a young man whom he had befriended. He claimed he never used the cars and had no immediate intention as to what he was going to do with them, except for the Ferrari, which he planned to use for transportation.

The California probation officer who reviewed the facts of this case concluded: Respondent is a "bright, articulate, versatile defendant," whose

driving ambition to obtain major financial gain, [sic] seems to have been the salient point which led to his willingness to engage in the artifice and strategy described in this offense to accomplish his target objective.

The reasons advanced by the defendant for his participation in this multiple car theft—financially related matter seem patently obvious. A review of his financial situation discloses that while this is a former practicing attorney who achieved a measure of distinction, the legal profession did not provide him with a high degree of financial return. It was probably for these reasons that defendant migrated to this jurisdiction and turned his talents to other business interests.

A good part of the series of events relative to the present offense point towards a well-planned, calculated financial scheme, devised by the defendant, utilizing the younger former cosuspect, designed to net him large remuneration (Probation Report 26–19 to 27–19).

The Office of Attorney Ethics now requests this Board to recommend to the Supreme Court that Respondent be disbarred.

## CONCLUSIONS AND RECOMMENDATIONS

 A criminal conviction must be accepted as conclusive evidence of guilt in a disciplinary proceeding. *In re Addonizio,* 95 *N.J.* 121, 123 (1984). The underlying facts of a conviction are relevant in determining what the appropriate discipline should be. *Ibid.* In determining the proper discipline to be imposed on an attorney guilty of misconduct, many factors have to be considered, including the nature and severity of the crime, whether the crime was related to the practice of law and any mitigating factors, such as evidence of the attorney's otherwise good reputation, prior trustworthy, professional con-

duct, and general good character. *Matter of Infinito*, 94 *N.J.* 50, 57 (1983). There is no hard and fast rule that requires a certain penalty for conviction of a certain crime. Every disciplinary matter is factually different and must be judged on its own merits. *Ibid.* Respondent had pleaded guilty before the Superior Court of Los Angeles county to one count of presenting a fraudulent insurance claim and six counts of receiving stolen property valued at approximately one-half million dollars. The California court determined that these offenses warranted a custodial sentence.

Mitigating factors presented in Respondent's favor include the following. This is the first disciplinary proceeding against him. He had pleaded guilty to the charges and made full restitution. The illegal activity did not involve the practice of law. The record, however, also discloses several aggravating factors. The nature and circumstances of these charges clearly support the conclusion that this Respondent had devised a well-planned scheme involving stolen high-priced cars. The Board finds that Respondent was not, as he maintained, the innocent victim of a younger man whom he had befriended and who talked him into this scheme. Instead, the facts establish that Respondent envisioned a sophisticated and continuing illegal operation. He did not merely harbor a single vehicle for a friend. This was a continuing car theft scam. His order of phony foreign car registration documents further illustrates his active involvement in the crime. His motive was greed. The record has clearly demonstrated that Respondent engaged in ethical misconduct.

Substantial weight must be given to the fact that this criminal activity by Respondent clearly establishes a total lack of moral fiber requisite in any member of the Bar. Speaking of that essential character trait necessary for an attorney, the court in *In re LaDuca*, 62 *N.J.* 133 (1973) said:

> Good moral character is a basic condition for membership in the bar. *In re Pennica*, 36 *N.J.* 401, 433–434 (1962); *In re Gavel*, 22 *N.J.* 248, 266 (1956). Any misbehavior, private or professional, which reveals lack of the character and

integrity essential for the attorney's franchise constitutes a basis for discipline. *In re Mattera,* 34 *N.J.* 259, 264 (1961) [*Id.* at 140].

The fact that Respondent did not commit these crimes in his professional capacity as an attorney is of no moment. In *In re Suchanoff,* 93 *N.J.* 226 (1983), the court noted that

It is well settled that an attorney is "... obligated to adhere to the high standard of conduct required of a member of the bar even though his activities did not involve the practice of law," *In re Franklin,* 71 *N.J.* 425, 429 [*Id.* at 230].

Respondent's criminal activity has impugned the integrity of the legal system. This was not "a single instance of abberational conduct." *In re Netchert,* 78 *N.J.* 445, 453 (1979). He engaged in illegal conduct that adversely reflects on his fitness to practice law and engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. *DR* 1–102(A)(3) and (4).

The Board finds that Respondent's conduct clearly demonstrates his unfitness to remain as a member of the bar of this State. The aggravating factors overwhelmingly outweigh the mitigating factors. He is not worthy of public trust and confidence. *In re Hughes,* 90 *N.J.* 32 (1982). Accordingly, the Board, by a requisite majority, recommends that Respondent be disbarred.

The Board further recommends that Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.