**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1868-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARIUS H. GITTENS,

    Defendant-Appellant.

_____

> Submitted December 12, 2018 – Decided July 18, 2019
>
> Before Judges Koblitz, Ostrer and Currier.
>
> On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 13-06-0659.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).
>
> Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A ninety-six count indictment charged defendant Darius Gittens and a co-defendant with twenty-five burglaries and related offenses between 2011 and 2012 in several municipalities. After the court severed seven counts, a jury convicted defendant of third-degree burglary of three homes and a second-degree theft from one of them; and acquitted him of the attempted burglary of a fourth home. The jury also separately acquitted him of a second-degree certain persons not to have weapons offense.[1] Thereafter, with the intention of applying to Drug Court, defendant entered an open plea to twenty additional third-degree burglaries, three related second-degree thefts, and one third-degree attempted burglary. By agreement, the State then dismissed without prejudice six firearms-related offenses, including the remaining certain persons offenses. After the court denied defendant's Drug Court application, the court imposed an aggregate term of seventeen years, with an eight-year parole disqualifier. Following the merger of four burglary counts into related theft counts, the court imposed consecutive terms of ten years and seven years on two of the theft counts, with parole ineligibility terms of five and three years, respectively. The court imposed concurrent seven-year terms on the remaining two theft counts.

---

[1] The seventh charge, a fourth-degree certain persons not to have weapons offense, was apparently not tried.

A-1868-16T3

As for the multiple remaining (unmerged) burglary and attempted burglary counts, the court imposed concurrent five-year terms.  The State then dismissed the remaining counts.

On appeal, defendant presents the following arguments for our consideration:

> POINT I
>
> THE COURT ERRED IN DENYING DEFENDANT'S ADMISSION INTO DRUG COURT.
>
> POINT II
>
> DEFENDANT'S MOTION FOR MISTRIAL BASED UPON A DNA SCIENTIST'S TESTIMONY THAT CODIS MEANT CONVICTED OFFENDER DNA INDEXING SYSTEM SHOULD HAVE BEEN GRANTED.
>
> POINT III
>
> COMMENTS MADE BY THE COURT CONCERNING A SUITCASE FOUND IN DEFENDANT'S BEDROOM WERE PREJUDICIAL AND DEPRIVED DEFENDANT OF A FAIR TRIAL.
>
> POINT IV
>
> THE STATE PRESENTED IMPROPER OPINION TESTIMONY WHICH INFRINGED ON THE FACT-FINDING DUTY OF THE JURY WHICH REQUIRES REVERSAL OF DEFENDANT'S CONVICTION (not raised below).

3

<u>POINT V</u>

ADMISSION OF IRRELEVANT IMMATERIAL AND PREJUDICIAL ITEMS AND DOCUMENTS INTO EVIDENCE WAS ERROR THAT DENIED THE DEFENDANT A FAIR TRIAL.

<u>POINT VI</u>

THE SENTENCE OF 17 YEARS WITH 8 YEARS OF PAROLE INELIGIBILITY WAS EXCESSIVE AND SHOULD BE MODIFIED AND REDUCED (Not raised below).

<u>POINT VII</u>

THE AGGREGATE OF ERRORS DENIED DEFENDANT A FAIR TRIAL (Not raised below).

Finding no merit in any of these contentions, we affirm.

I.

We turn first to defendant's challenge of his jury trial conviction. We consider defendant's points against the backdrop of substantial evidence of guilt.

DNA from blood found on broken glass, window blinds, and fabrics at the three burglary scenes matched defendant's DNA sample. The police seized from defendant's home various tools and devices that could be used in committing a burglary, including a list of police radio frequencies and a police scanner, radios, flashlights, a jewelry test kit and cleaner, and a wireless camera locator. A

police witness testified that defendant admitted his involvement in the four burglaries. Defendant also secured the return of several stolen items.

Defendant testified in his own defense, but the jury evidently rejected his explanation that he possessed the various instruments for use in his security business; he sold various stolen items at his co-defendant's behest, unaware they were stolen; his admission that he was involved in a burglary was "satirical"; and his co-defendant planted his blood at the scenes.

Defendant called his co-defendant to testify. The co-defendant had pleaded guilty to two counts of third-degree burglary. Rather than exonerate defendant, the co-defendant confirmed he pleaded guilty to conspiring – implicitly with defendant – to commit the burglary at one of the three homes involved in defendant's trial; and he denied planting defendant's blood at the scene.

In the face of this evidence, defendant contends that he was deprived of a fair trial because a State Police Laboratory DNA scientist, who mentioned that he once worked for the CODIS laboratory, explained erroneously that the acronym stood for "Convicted Offender DNA Indexing System."[2] The judge

---

[2] CODIS actually stands for Combined DNA Index System. See Maryland v. King, 569 U.S. 435, 444 (2013); 34 U.S.C. § 40702(a)(3).

denied defendant's motion for a mistrial, reasoning that the statement referred to the witness's employment background, not defendant's criminal background. The witness did not imply that defendant was a convicted offender or that a sample of his DNA was in CODIS.

The court had previously delivered the model charge on DNA databases, see Model Jury Charges (Criminal), "Instruction Regarding DNA Evidence and CODIS" (May 13, 2013), which instructed the jury not to speculate about the source of defendant's DNA sample. The judge described various databases that would not associate defendant with past criminal behavior. After denying the mistrial motion, the judge promptly delivered a curative instruction. He stated there was "nothing before this Court that connects Mr. Gittens to [CODIS]," and referred back to the model charge he delivered earlier. The judge reiterated that instruction in his final charge.

Absent an abuse of discretion resulting in a manifest injustice, we will not disturb a trial court's denial of a mistrial motion and its determination that its instruction cured any potential prejudice from an errant remark. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019). The witness's reference posed little risk of prejudice, since he did not link defendant to CODIS or to

6

"convicted offenders." The judge then swiftly emphasized the point. We discern no error.

Nor was defendant denied a fair trial because of the judge's off-hand remark, describing for the record a suitcase the State offered in evidence. The judge stated, "And the Court doesn't mean to make light of it but that fact is if we'd seen that thing open up in an airport, we all would have run. It appears to have a battery and bunch of wires and who knows what else, but it fills the suitcase." Defense counsel objected to admission of the suitcase on other grounds, but did not object to the judge's characterization. Therefore, we consider defendant's argument under a plain error standard.

Applying that standard, the judge's allusion to suitcase bombs was not "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached," or "denied a fair trial and fair decision on the merits." State v. Macon, 57 N.J. 325, 336, 338 (1971). Although the judge's remark was ill-advised, the State did not contend, nor did the judge seriously suggest, that defendant was a bomb-maker, or the suitcase was a bomb. Rather, the State contended that defendant utilized various forms of technical electronic equipment to foil home security systems and to commit burglaries undetected by police. In his own defense, defendant said he was an expert in

security systems, but he used his expertise as a security consultant, not a burglar. He explained that the suitcase was a home-made "signal jammer," which he used to detect meeting attendees who surreptitiously transmit information in violation of non-disclosure agreements. Under these circumstances, the judge's remark did not constitute plain error.

Defendant also challenges the court's admission into evidence, over his objection, several items taken from defendant's residence – a police scanner, nine flashlights, a jewelry cleaning kit, handcuffs, and a "Non-deadly Force Training Commission Identification Card."[3] He also contends the court erred in admitting into evidence a property loss report that one burglary victim filed with the police, which itemized various items she said were stolen from her home. Relatedly, as a point of plain error, defendant argues that a detective, without being offered as an expert witness, impermissibly offered an expert opinion that "items like flashlights, scanners, are items that would be in the possession of a potential burglar committing burglaries in the evening hours." Although defense counsel objected when the prosecutor asked the detective whether the items seized from defendant's home had "any significance" to him, he did so on the

_____

[3] Defendant also argues the court erred in permitting the State to introduce gloves into evidence; however, the record reflects that the State agreed not to introduce them after the court pressed the State to explain their relevance.

ground that the witness "already testified as to the exact point," not that the question called for an expert opinion.

We discern no error in the admission of the items taken from defendant's residence, or plain error in the admission of the detective's opinion. Turning first to the opinion, we agree that the detective's testimony was, properly characterized, expert opinion, as it relied on his specialized knowledge, skill, experience or training. See State v. Hyman, 451 N.J. Super. 429, 443-44 (App. Div. 2017) (distinguishing between expert and lay opinion of police witnesses). However, defendant was obliged to raise an objection, to enable the court to rule, and the State to respond. See State v. Robinson, 200 N.J. 1, 19 (2009). Instead, defendant remained silent, and deprived the State of the opportunity to qualify the detective as an expert, which it readily could have done, in light of the detective's description of his training during his seventeen-year career.

The opinion itself, if offered by an expert, did not usurp the jury's function as defendant contends. The defense established on cross-examination that the items could be purchased and used legally, and they were not directly tied to one of the burglaries. On redirect, the officer offered his opinion that "items like flashlights" – defendant had several in his bedroom – and "scanners" were burglar's tools. That was not an opinion as to defendant's guilt that usurped the

jury's function.  See State v. Salernitano, 27 N.J. Super. 537, 541-42 (App. Div. 1953) (affirming conviction of possession of burglar's tools based in part on an expert opinion); State v. Knudtson, 195 N.W.2d 698, 700-01 (Iowa 1972) (approving admission of opinion from qualified expert that prybar, channel lock pliers and other items were "burglar tools" in prosecution for breaking and entering).  We therefore discern no plain error in the admission, without objection, of the detective's opinion.  Cf. Hyman, 451 N.J. Super. at 458-59 (concluding that admission of police witness's opinion as lay instead of expert was harmless error where witness's expert qualifications were apparent from the record).

As for the items seized from defendant's residence, we deferentially review the trial court's relevance determinations for an abuse of discretion.  See Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (stating that "[d]eterminations pursuant to N.J.R.E. 403 should not be overturned on appeal 'unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted'") (quoting State v. Carter, 99 N.J. 86, 106 (1982)).  We find no abuse of discretion here.  As the trial judge observed, defendant possessed devices and tools that would enable him to commit burglaries, regardless of whether the

items were purchased legally and had lawful uses. Therefore, the items were relevant, as they tended to prove his guilt.

Finally, defendant contends the court erred in permitting into evidence a burglary victim's written itemization of her losses prepared shortly after the burglary of her home. The State used the document to refresh the victim's recollection of numerous items of jewelry and other collectibles that were taken, and their appraised values. The list was not admissible as a past recollection recorded, N.J.R.E. 803(c)(5), because the witness testified that, once refreshed by the document, she recalled the items and their values. At trial, the prosecutor contended that the document was admissible under N.J.R.E. 607 as a prior consistent statement, but the State does not press that contention before us, nor point to any express or implied charge of recent fabrication. Rather, the State now contends that the document was not hearsay at all, because the victim testified. As to that point, we disagree. The witness's availability may assure defendant's right of confrontation, but it does not convert a hearsay document into non-hearsay.

Nonetheless, we are convinced that any error in admitting the document was harmless. The document was cumulative. The witness testified at length about the items taken from her home. Many of them were returned by defendant

himself. The total value of the items taken exceeded $115,000 – far more than the $75,000 threshold for a second-degree theft. We are unconvinced that the document's admission was prejudicial or confused the jury.

To the extent not addressed, defendant's remaining points challenging his jury conviction lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

## II.

Defendant contends the trial court erred in denying his Drug Court application.[4] It was his second. His first was denied because he was statutorily barred, apparently based on the firearms charges in the indictment. He applied again after his guilty plea and the State's dismissal of the remaining firearms charges.[5]

The court found that defendant met all but one of the nine criteria for admission under N.J.S.A. 2C:35-14(a)(1)-(9). He was ineligible because the court could not find that "no danger to the community w[ould] result from the person being placed on special probation," N.J.S.A. 2C:35-14(a)(9). The court cited defendant's numerous prior contacts with the criminal justice system,

---

[4] The judge who ruled on the Drug Court appeal was not the judge who presided over the trial and sentenced defendant.

[5] Although defendant was acquitted of one count of being a certain person not to possess a firearm, other firearms-related offenses remained.

A-1868-16T3

including his prior escape from incarceration. Defendant's record included convictions for: burglary in California in 1979, and in New York in 1982 and 1985; escape in New York in 1988; and misdemeanor theft in Florida in 2009. The court focused on the serious nature of defendant's crimes, noting they extended over a year, involved sophisticated, well-planned burglaries, and resulted in thefts involving substantial value. The judge stated, "The instant burglaries were not mere impulsive petty thefts taking small monetary amounts, they were repetitive, planned out, and sophisticated acts with an intended outcome of substantial monetary gain. The court considers the degree [and] frequency of the present crimes as an indication that [d]efendant would and will present a danger to the community."

Although a decision whether the Drug Court statute governs a particular case is a legal question that we review de novo, State v. Maurer, 438 N.J. Super. 402, 411 (App. Div. 2014), "application of N.J.S.A. 2C:35-14(a)(9) requires fact-finding and an exercise of the sentencing judge's discretion." State v. Hyland, 238 N.J. 135, 139 (2019). We therefore review the trial court's finding for an abuse of discretion, rather than exercise de novo review, as defendant contends. Under that deferential standard, we may not substitute our judgment for the trial court. Instead, our task is to ascertain whether there is sufficient

evidence in the record to support the court's decision. State v. Roth, 95 N.J. 334, 363-64 (1984).

We conclude there was. As the trial court noted, defendant was not a burglar who engaged in petty thefts to support his drug addiction. Defendant engaged in twenty-three home burglaries over an extended period of time. He used sophisticated equipment to foil security devices and evade the police. The monetary harm of his crimes was substantial. The fact that defendant succeeded in avoiding confrontations with residents of the homes he burglarized, which defendant highlights, does not obviate the danger he posed to their safety; the impact his crimes had on their sense of security; or the obvious risk he posed to the community's property.

We recognize that the Legislature in 2012 relaxed the requirements for admission to Drug Court, by removing the blanket prohibition of persons convicted of second-degree burglary and second-degree robbery. L. 2012, c. 23, § 5; see N.J.S.A. 2C:35-14(b)(2). Nonetheless, the Legislature anticipated that few such offenders would surmount the hurdle presented by the factors in N.J.S.A. 2C:35-14(a)(1)-(9). While 3000 individuals were anticipated to become newly eligible under the expanded admission criteria, only 100 were expected to ultimately gain admission. See Fiscal Note to S. 881 (Third

Reprint), 215th Legislature 6 (June 25, 2012) (stating that the Administrative Office of the Courts estimated that 3000 additional defendants per year would become eligible under the expanded admissions criteria); Senate Budget and Appropriations Comm. Statement to S. 881 (First Reprint), 215th Legislature 6 (April 3, 2012) (noting that, since robbery or burglary typically involves violence, the Judiciary estimated that the proposed amendment would result in the additional admission into the Drug Court Program of 100 offenders).

The recent revision of the Drug Court Manual clarifies what is meant by "danger to the community" as set forth in factor nine. "Danger to the community means that the supervisory resources of drug court are not adequate to safely treat the defendant in the community at the appropriate level of care." New Jersey Statewide Drug Court Manual 9 (June 2019 ed.). Although unavailable to the trial court, this revision supports the court's conclusion that the scope and sophistication of defendant's criminal behavior posed a threat to the community that the Drug Court Program could not be expected to control.

We therefore affirm the trial court's denial of defendant's Drug Court application.

A-1868-16T3

Finally, we reject defendant's argument that the aggregate seventeen-year sentence was excessive and should be set aside. "The reviewing court must not substitute its judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014). We may not set aside a trial court's sentence "unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

There was sufficient evidential support for the trial judge's findings of aggravating factors three, the risk of reoffending; six, the extent of defendant's prior record; and nine, the need to deter. See N.J.S.A. 2C:44-1(a)(3), (6) and (9). Although defendant emphasizes that his prior burglary convictions were remote in time, the court did not err in attaching weight to his criminal record, particularly related to aggravating factor six, inasmuch as his criminal behavior continued thereafter, including a theft in 2009. Nor did the court err in finding that defendant posed a risk of reoffending, particularly in view of his record, his

sophistication in the commission of crimes, and his admitted substance abuse problem.

Defendant contends the court erred in finding no mitigating factors. He highlighted at sentencing, and repeats before us, that he cooperated with police by retrieving several items. The court addressed the argument, but concluded that defendant's efforts were a self-serving attempt to secure a favorable disposition in a case in which the State had compelling DNA evidence against him. The court duly acknowledged defendant's cooperation, but was not compelled under the circumstances to grant the mitigating factor any weight. See State v. Dalziel, 182 N.J. 494, 504-05 (2005) (stating a judge was required to acknowledge defendant's cooperation, but was not required to give it weight).

Defendant also contends the court should have considered mitigating factor ten – amenability to probation, specifically, drug court probation. See N.J.S.A. 2C:44-1(b)(10). However, another judge had already found special probation inappropriate. Absent a "serious injustice," mitigating factor ten does not apply to a sentence for a crime – such as second-degree theft – with a presumption of incarceration. See State v. Sene, 443 N.J. Super. 134, 144-45 (App. Div. 2015) (quoting State v. Evers, 175 N.J. 355, 388 (2003)).

Defendant also raises for the first time on appeal, that the court should have found mitigating factors eight, defendant's conduct resulted from circumstances unlikely to recur, and eleven, hardship to dependents. N.J.S.A. 2C:44-1(b)(8), (11). We discern no plain error. A mitigating factor eight finding would have been inconsistent with the court's aggravating factor three finding. And there was no compelling evidence that incarceration would cause an excessive hardship to defendant's dependents.

Finally, we reject defendant's argument that the sentence should be set aside because of its disparity with the sentence of his co-defendant, who received probation conditioned on 364 days in jail. We recognize that uniformity in sentencing is a major objective of the criminal justice system. State v. Roach, 146 N.J. 208, 231-32 (1996). But, not all divergent sentences are unfair or unjust. Ibid. "The question . . . is whether the disparity is justifiable or unjustifiable." Id. at 232-33. A court must consider whether the individuals receiving disparate sentences were similarly situated. State v. Case, 220 N.J. 49, 63 (2014). The sentencing judge did not abuse his discretion in imposing disparate sentences. As the judge noted, the co-defendant was charged with few crimes; and he faced the likelihood of additional incarceration as a result of other pending charges. Furthermore, the co-defendant entered a plea and defendant

18

did not.  See State v. Gonzalez, 223 N.J. Super. 377, 393 (App. Div. 1988) (justifying disparate sentence where co-defendants cooperated with law enforcement authorities).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION